**In re Suheil S. HARES, Abeer S. Abboushi, Debtors**

**Suheil S. Hares et al., Plaintiffs,**

**v.**

**Sage Financial Ltd., et al., Defendants.**

**Bankruptcy No. 05–52620.**
**Adversary No. 08–02134.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

July 19, 2010.

Theodore R. Saker, Saker Law Offices, Columbus, OH, for Plaintiffs.

Sage Financial Ltd., Rockville, MD, pro se.

Kendra Title, Corp., Pataskala, OH, pro se.

*ORDER ON AMENDED MOTION TO ALTER OR AMEND ORDER OVERRULING MOTION FOR DEFAULT JUDGMENT*

C. KATHRYN PRESTON, Bankruptcy Judge.

This matter came on for consideration by the Court of the Plaintiffs' Amended Motion for an Order to Alter or Amend Order of September 28, 2009, Overruling Motion for Default Judgment and Dismissing Adversary Proceeding ("Motion") (Doc. # 20) filed by Plaintiffs Suheil S. Hares and Abeer S. Abboushi ("Plaintiffs"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## I.  Background.

According to the Complaint, Defendant Sage Financial Ltd. ("Defendant") obtained a judgment against Plaintiff Suheil S. Hares on April 27, 2004, and caused a certificate of judgment to be filed on August 27, 2004, thereby creating a lien on real estate owned by Plaintiff Suheil S. Hares. Plaintiffs filed a joint voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on February 25, 2005. On Schedule A, Plaintiffs listed as an asset their home, a single family residence located at 2745 Nottingham Road, Upper Arlington, Ohio (the "Residence") with a value of $147,000. At the time of filing, the Residence belonged to Plaintiff Suheil S. Hares and was encumbered by two mortgages securing approximately $144,850 of debt. Plaintiffs claimed an exemption in the Residence on Schedule C pursuant to Ohio Rev.Code § 2329.66(A), to which there was no objection. Accordingly, by virtue of Fed. R. Bankr.P. 4003 and § 522(*l*) of the Bankruptcy Code (sometimes the "Code"), Plaintiffs' claim of exemption became final. Plaintiffs also filed a Statement of Intention, indicating their intention to retain the Residence and continue to pay the mortgage holders. On April 6, 2005, the Trustee for the estate filed a report stating that there were no assets to administer for the benefit of

creditors of the estate, and the case was closed shortly thereafter. Pursuant to 11 U.S.C. § 554(c), closing of the case effected an abandonment of any interest in the Residence that the estate might have held.

Some time later, Plaintiffs filed a Motion to Reopen Bankruptcy Case in order to obtain relief. In due course the case was reopened and on May 15, 2008, Plaintiffs filed this adversary proceeding to avoid the judgment lien held by Defendant on the Residence pursuant to § 506 of the Bankruptcy Code.[1] The Defendant filed no response, whereupon Plaintiffs filed a Motion for Default Judgment. Relying on the Supreme Court case of *Dewsnup v. Timm*, this Court denied Plaintiff's Motion for Default Judgment and dismissed the Complaint on the basis that the Complaint failed to articulate a legal basis upon which the judgment lien could be avoided. Plaintiffs then filed the instant Motion seeking reconsideration of the Court's order.

## II. Discussion.

### A. Standard for Motions to Alter or Amend a Judgment

█ The Motion to alter or amend the judgment is brought pursuant to Fed. R.Civ.P. 59, which is made applicable to bankruptcy cases pursuant to Fed. R. Bankr.P. 9023. Rule 59(e) in effect when the Motion was filed[2] stated simply, "A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). There are no standards for filing of such a motion set forth in Rule 59; however-

er, the courts have established four grounds for a motion to alter or amend a judgment: (1) an intervening change in the controlling law; (2) newly discovered evidence; (3) to correct clear legal error; and (4) to prevent manifest injustice. *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir.2006). *See also* 12 Moore's Federal Practice ¶ 59.30[5][a] p. 59–110 (3d ed.2009). Although not expressly stated, it is clear that the Plaintiffs are pressing their motion under the theory that the Court's prior decision constituted legal error. Plaintiffs assert that the Court failed to consider the effect of *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), emphasizing that the Defendant's judgment lien is nonconsensual and that there is no equity in the Residence that secures the lien.[3]

### B. Applicability of § 506.

█ Plaintiffs have failed to show that 11 U.S.C. § 506(a) is applicable. Section § 506(a)(1) states in pertinent part:

An allowed claim of a creditor secured by a lien on property *in which the estate has an interest* ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1) (emphasis added). The specific language used in § 506 indi-

---

1. Kendra Title Corp. was also named defendant in this adversary proceeding. However, the Complaint failed to state any cause of action against or seek any relief as to Kendra.

2. .The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure were amended effective December 1, 2009.

3. In the Complaint, Plaintiffs alleged the value of the Residence is $147,000.00. The Complaint further alleges that the Residence is subject to two mortgages securing approximately $146,000.00 of debt. For purposes of this decision and in light of the default by the Defendant, the Court will take these facts as true.

cates that its provisions are to be utilized for the benefit of the estate, rather than the benefit of debtors in bankruptcy. Plaintiffs have not shown that their Residence is property in which the estate has an interest. Indeed, in their Schedules, Plaintiffs claimed exempt any value in the Residence in excess of the mortgages, to which the Trustee interposed no objection. Furthermore, the Trustee disclaimed any interest in the Residence when he filed the "no asset" report in the case, and the Residence was deemed abandoned (and thus no longer property of the estate) when the case was closed. See 11 U.S.C. § 554(c).

Although the status of property in relationship to the bankruptcy estate was not a lynchpin of the decision, the Supreme Court nonetheless has held that the provisions of § 506 do not inure to the benefit of Chapter 7 debtors. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup,* the debtors sought to strip down the lien of a mortgage holder to the then current value of the encumbered real estate. The mortgage holder was due the sum of approximately $120,000.00, but the real estate was worth only $39,000.00. After reviewing the history of the viability of liens in bankruptcy cases, the Court held that "the creditor's lien stays with the real property until the foreclosure.... Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor...." *Dewsnup,* 502 U.S. at 417, 112 S.Ct. 773. The Court recognized this was Congress' intent when it passed the Bankruptcy Reform Act of 1978, noting the legislative history regarding § 506(d): "Subsection (d) permits liens to pass

through the bankruptcy unaffected." *Id.* at 419, 112 S.Ct. 773 (quoting H.R.Rep. No. 95–595, p. 357 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6313).

Plaintiffs argue that this Court's interpretation of *Dewsnup* is erroneous as a matter of law because that case involved an allowed secured claim, which was a focus of the Supreme Court's decision. Plaintiffs insist that Defendant does not have an allowed secured claim, having failed to file a proof of claim in the Plaintiffs' bankruptcy case.[4] Thus, says Plaintiff, the claim has not been allowed.

■■■ Failure to file a proof of claim does not affect the property interest created by a lien. In fact, § 506(d) specifically recognizes this, stating that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, *unless ...* (2) such claim is not an allowed secured claim *due only to the failure of any entity to file a proof of such claim* under section 501 of this title." 11 U.S.C. § 506(d)(2) (emphasis added). And Plaintiffs admitted that Defendant has a judgment lien; in paragraph 4.a. of the Complaint, Plaintiffs stated, "On or about April 27, 2004, [Defendant] recovered a judgment against Plaintiff Hares in the amount of $5,684.58. On or about August 27, 2004, [Defendant] caused a judgment lien to be filed in the office of the Clerk of the Common Pleas Court of Franklin County, Ohio, at Judgment Lien Docket No. 04JG–08–019121." Complaint, paragraph 4.a. (Doc. # 1). Nor does lack of sufficient equity in property to secure a lien void its existence. *See, e.g., Talbert v. City Mortgage Servs. (In re Talbert),* 344 F.3d 555, 561 (6th Cir.2003) ("[R]egardless of the fact that the current value of the real property is

---

4. The Plaintiff/Debtors' bankruptcy case was a no-asset case and therefore, creditors were

not required to file proofs of claim.

insufficient to recover (sic) City Mortgage's junior lien, the claim is nonetheless 'secured in the ordinary sense, that is, ... [it] is backed up by a security interest in property, whether or not the value of the property suffices to cover the claim.' " (Bracketed text in original; citations omitted.)).[5]

Plaintiffs suggest that the instant case is distinguishable from *Dewsnup* inasmuch as the Dewsnups, the debtors in that case, were attempting to decrease the value of the secured claim of the mortgage holder, whereas these Plaintiffs are attempting to completely avoid Defendant's lien. Admittedly, the Supreme Court seemingly limited its ruling to the facts of *Dewsnup*;[6] however, the Sixth Circuit Court of Appeals has addressed the specific issue at hand. *Talbert, supra,* involved a chapter 7 case in which the debtors sought to completely avoid City Mortgage's junior mortgage on the basis that there was no equity in the property to secure City Mortgage's mortgage after consideration of the first mortgage. The Court of Appeals held, "Because the Supreme Court's reasoning in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), applies with equal force and logic to the issue at hand, we hold that a Chapter 7 debtor may not use § 506 to 'strip off' an allowed junior lien where the senior lien exceeds the fair market value of the real property in question." *Talbert,* 344 F.3d at 556. The decisions of the Sixth Circuit Court of Appeals are, of course, binding on this Court. To the extent that the cases cited by Plaintiffs hold contrary to *Talbert,* they are overruled by *Talbert,* or otherwise not persuasive authority in this circuit due to the *Talbert* ruling.

█ Nevertheless, Plaintiffs attempt to circumvent the teachings of *Talbert,* pointing out that *Dewsnup* and *Talbert* dealt with consensual mortgage liens, whereas the Defendant's judgment lien in the instant case is nonconsensual. Plaintiffs' theory ignores the language of § 506, the contours of which are set forth in terms of secured *claims,* without distinction between consensual and nonconsensual liens. See 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property ..."), § 506(b) ("... value with respect to personal property securing an allowed claim ..."), § 506(c) ("The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs ..."), and § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...") The term "claim" is defined in the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, *secured,* or *unsecured....* " 11 U.S.C. § 101(5) (emphasis added). Similarly, the term "lien" as used in § 506 is not limited to consensual or nonconsensual liens.[7] Clearly Congress knew how to describe nonconsensual liens

---

5. Plaintiffs declare that they have never conceded that Defendant's lien is secured, but that is irrelevant. Avoidance of a lien in a bankruptcy case can only be effectuated by exercise of judicial authority pursuant to the provisions of Chapter 5 of the Bankruptcy Code.

6. "We therefore focus upon the case before us and allow other facts to await their legal resolution on another day." *Dewsnup,* 502 U.S. at 416–17, 112 S.Ct. 773.

7. The term "lien" is defined in the Bankruptcy Code as "charge against or interest in property to secure payment of a debt...." 11 U.S.C. § 101(37).

when it sought to focus on such a lien. See, e.g., 11 U.S.C. § 522(f) ("[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property ... if such lien is (A) a judicial lien ...."), and § 544(a) ("The trustee shall have ... the rights and powers of ... a creditor that ... obtains ... a judicial lien...."). Because the Sixth Circuit Court of Appeals has determined that § 506 is unavailable to Chapter 7 debtors seeking to avoid a consensual junior mortgage, it stands to reason that it is unavailable to Chapter 7 debtors seeking to strip off a judgment lien. Indeed, the Sixth Circuit Court of Appeals has observed that "[s]ection 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor." *Talbert*, 344 F.3d at 561 (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 783 (4th Cir.2001)). Thus, clearly, *Talbert* applies with equal force to consensual and nonconsensual liens. Plaintiffs' argument is without merit.

Finally, in the Motion, Plaintiffs observed that this Court was "curiously silent" about the rule established in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *Nobelman* is inapposite: *Nobelman* involved Chapter 13 debtors attempting to reduce a mortgage on their principal residence under 11 U.S.C. § 506. The Supreme Court analyzed the juxtaposition of § 506 and § 1322(b)(2), concluding that the Bankruptcy Code does not permit a Chapter 13 debtor to reduce a lender's secured claim if it is secured only by a lien on the debtor's principal residence. The Court

explained that because the creditor held a secured claim, albeit undersecured, the rights that the creditor enjoys as a mortgagee are protected by § 1322(b)(2), and are not limited by the valuation of its secured claim. The Plaintiffs' bankruptcy case was brought under Chapter 7, not Chapter 13. Plaintiffs fail to illustrate how *Nobelman* supports the Plaintiffs' position. In light of *Dewsnup* and *Talbert*, there was and is no purpose served for this Court to further discuss *Nobelman*.

### III. Conclusion.

It is clear that this Court's prior order was correct that the Plaintiffs' Complaint fails to state a cause of action, inasmuch as the relief provided by 11 U.S.C. § 506 is not available to Chapter 7 debtors, and cannot be invoked by the Plaintiffs.

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Amended Plaintiff's Motion for an Order to Alter or Amend Order of September 28, 2009, Overruling Motion for Default Judgment and Dismissing Adversary Proceeding is DENIED.[8]

**IT IS SO ORDERED.**

---

8. This Order is, however, without prejudice to Plaintiff/Debtors to seek avoidance of Defendant's judgment lien pursuant to other provisions of the Bankruptcy Code, such as 11 U.S.C. § 522(f), if applicable.