**In re Patricia M. MOEHRING, Debtor.**

No. 10–37308.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Jan. 8, 2013.

Jonathan S. Hawkins, Austin Landing I, Dayton, OH, for the Creditor.

Scott G. Stout, Dayton, OH, Staff Attorney for the Chapter 13 Office.

**Decision Granting Motion for Summary Judgment for U.S. Bank, as Trustee for Certificateholders of SACO I Trust 2006–3, Mortgage Backed–Certificates, Series 2006–3 on the Debtor's Claim Objections and Determining the Debtor Lacks Standing to Object to the Notice of Assignment of the Proof of Claim**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This decision addresses all pending filings relating to a dispute between a debtor and an asserted holder of a promissory note and assignee of a mortgage on the debtor's principal residence. The ultimate issue is whether the creditor should be granted summary judgment determining that it has an allowed secured claim and, if so, the amount of the claim. This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## II. Facts and Procedural Background

On June 1, 2005 the debtor, Patricia M. Moehring ("Moehring"), and her non-filing spouse, Gary R. Moehring, (collectively, the "Moehrings") executed a promissory note evidencing a loan through which they borrowed $32,800 from SouthStar Funding, LLC ("Southstar") [Movant Exhibit 1; (the "Note") ]. By an allonge, the Note was endorsed in blank (not to a particular individual or entity) by Southstar. *Id.* In addition, on June 1, 2005 the Moehrings granted a mortgage on their residence located at 110 E. North Street, Mason, Ohio (Movant Exhibit 2) (the "Mortgage"). The mortgagee of record is listed as Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] as nominee for Southstar. *Id.* The Mortgage was recorded on June 8, 2005. *Id.*

The Note and Mortgage were later bundled and securitized into a securitization trust known as the "SACO I Trust 2006–3, Mortgage Backed–Certificates, Series

---

1. MERS typically holds legal title to mortgages for lending institutions to expedite the recording of mortgage assignments. Southstar held the equitable interest in the Mortgage and upon transfer of the Note, the equitable interest in the mortgage followed. *See In re Gemini Services, Inc. v. Mortgage Elec. Regis. Sys. (In re Gemini Services, Inc.),* 350 B.R. 74, 81–82 (Bankr.S.D.Ohio 2006).

2006-3" (the "Trust").[2] On December 9, 2010 MERS assigned the Mortgage to Bear Stearns Asset Backed Securities I, LLC, which was the depositor for the Trust. LaSalle Bank, N.A. was the original trustee of the Trust for the certificate holders who owned the beneficial interests in the Trust, including the Note and Mortgage. Bank of America, N.A. ("BOA") succeeded to LaSalle Bank as the trustee of the Trust as a result of the merger of LaSalle Bank with BOA.

On November 11, 2010 Moehring filed a petition for relief under Chapter 13 of the Bankruptcy Code (doc. 1). She filed her schedules with her petition, noting a first mortgage secured debt owed to Litton Loan Servicing in the amount of $136,814 and a second mortgage secured debt owed to EMC Mortgage Corporation in the amount of $32,527 on her Schedule D (doc. 1). These two mortgage debts were not scheduled as disputed, unliquidated, or contingent. In addition, in the column titled "Date Claim Was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien," Moehring proposed the EMC Mortgage debt was to be **"PAID IN FULL THROUGH THE PLAN, NOT AS A CONDUIT"** and that the mortgaged residence was jointly owned with her non-filing spouse. Moehring has not disputed that the second mortgage debt which she scheduled and provided for in the Plan under the name "EMC Mortgage Corporation" is the same debt which U.S. Bank asserts to hold.

On December 30, 2010, after Moehring filed her bankruptcy petition but before any proof of claim was filed in the bankruptcy case, BOA entered into an Assignment and Assumption Agreement with U.S. Bank, N.A. ("U.S. Bank") through which BOA's interest in the Note and Mortgage as trustee of the Trust was transferred to U.S. Bank. Juarez Affidavit, ¶ 7; Movant Exhibit 4. U.S. Bank's position is this Assignment and Assumption Agreement resulted in U.S. Bank being a creditor in this case since it is the holder of the Note.

The last date to file proofs of claim in this case was March 14, 2011 (doc. 11, *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines*). On January 20, 2011, 21 days after it transferred its interest in the Note and Mortgage to U.S. Bank, "Bank of America, National Association as successor by merger to LaSalle Bank National Association, as Trustee for Certificateholders of Bear Stearns Asset Backed Securities LLC Mortgage Backed Securities Series 2006-3" filed a proof of claim [3-1] (Movant Exhibit A), purporting to hold the Note, secured by the Mortgage (the "Claim"). Movant Exhibit B, ¶ 6. This proof of claim [3-1] (the "BOA Proof of Claim") was filed by Chase Home Finance, LLC as the servicer of the loan. Attached to the proof of claim was a copy of the endorsed Note as well as a copy of the recorded Mortgage.

On September 13, 2011 the BOA Proof of Claim was amended to change the address for disbursements made to Chase as the servicer of the loan [claim 3-2]. On April 5, 2012 a notice of *Transfer of Claim Other Than for Security* was filed, noting the December 30, 2010 transfer of the Claim to U.S. Bank as the trustee of the Trust (doc. 72).[3] The Note and Mortgage

---

**2.** For a brief summary of the mortgage securitization process, see *In re Smoak,* 461 B.R. 510, 515–16 (Bankr.S.D.Ohio 2011).

**3.** The proof of claim was transferred as a "Transfer of Claim Other Than for Security After Proof Filed" pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(1).

remained for the benefit of the Trust and is currently serviced by JP Morgan Chase Bank, N.A. ("Chase") (Affidavit of Silvia Juarez [Movant Exhibit B], ¶ 1).[4]

On May 17, 2012 U.S. Bank amended the BOA Proof of Claim to reflect an original principal loan balance on the petition date of $32,527.62, rather than $35,527.62 [claim 3-3]. The Note, Mortgage, and Assignment of Mortgage were attached to amended proof of claim, and the name of the creditor was changed from BOA to U.S. Bank.

Moehring's Chapter 13 plan (doc. 6) was confirmed through an order entered on January 14, 2011 (doc. 20) and provides for payment in full of the Note.

On June 23, 2011, through legal counsel, Moehring filed an objection to the Claim (doc. 37). This objection disputed the amount of interest included in the arrearage portion of the Claim. On March 30, 2012 Moehring, pro se, filed an amended objection to the Claim, asserting that the Claim is "false" (doc. 71).[5] In addition, on April 26, 2012 Moehring filed an objection to the notice of the Transfer of Claim (docs. 72 & 73), again asserting that the Claim is "false" (doc. 77). U.S. Bank has moved for summary judgment on all of Moehring's objections to its proof of claim, as amended (doc. 93), and asserts that Moehring lacks standing to object to the assignment of the proof of claim.

## III. Positions of the Parties

Moehring has raised three fundamental concerns in her filings: 1) the original proof of claim was false as filed; 2) the underlying documents were fraudulently assigned; and 3) the accrued interest sought to be collected through the proof of claim was improperly calculated. *See Objection to Proof of Claim* (doc. 37) and *Amended Objection to Claim 3 of Bank of America C/O Chase Home Finance, LLC* (doc. 71). Moehring has also objected (doc. 77) to the notice of the transfer of the claim to U.S. Bank filed on April 5, 2012 (doc. 72). U.S. Bank denies Moehring's assertions and argues that it is the holder the Note and, therefore, is entitled to enforce the Note; the Proof of Claim originally filed by BOA and later amended by U.S. Bank is valid and should be allowed; U.S. Bank's calculation of its claim as evidenced by the Proof of Claim, as amended, is correct and Moehring does not have standing to object to the notice of the transfer of the claim to U.S. Bank and, therefore, that objection should be denied.

For the reasons stated below, the court determines that U.S. Bank is entitled to summary judgment denying Moehring's objections and allowing its Claim in the amount asserted in the proof of claim, as filed on May 17, 2012. The court further determines that U.S. Bank's claim shall be paid in accordance with the treatment provided in Moehring's confirmed Plan.

**4.** The court is entitled to infer that the Juarez affidavit [Movant Exhibit B] is based upon personal knowledge from her position with JP Morgan Chase Bank, N.A. as a Home Lending Senior Research Specialist and it is therefore admissible. Further, the unrebutted affidavit was based upon her personal review of the records. She further swears, and the court finds, that the documents she relied upon, including the Note and Mortgage, meet the ordinary course of business exception to the hearsay rule (Federal Rule of Evidence 803(6)). Therefore, the documents are properly authenticated and admissible under the business record exception to hearsay. See Fed.R.Evid. 803(6) & 901.

**5.** The Debtor's legal counsel filed a motion to withdraw as counsel on March 12, 2012, which the court granted after a hearing on May 4, 2012 (docs. 60 & 78). The Debtor has proceeded on a pro se basis since that time.

## IV. Conclusions of Law

### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56, made applicable through Federal Rules of Bankruptcy Procedure 7056 and 9014, sets forth the standard to address the parties' filings. It states, in part, that a court must grant summary judgment to the moving party "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

In order to prevail, the movant, if bearing the burden of persuasion, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmovant, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmovant's claim or 2) demonstrate to the court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the nonmovant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348.

Affidavits presented as evidence must be based upon personal knowledge and set forth facts admissible in evidence. Fed. R.Civ.P. 56(c)(4). A party may object to purported evidence presented in a form that would not be admissible. Fed. R.Civ.P. 56(c)(2).

### B. *As the Holder of the Note, U.S. Bank May Enforce the Note and Mortgage*

■ Based upon the undisputed evidentiary record, U.S. Bank, as Trustee for the Trust, may enforce the Note. The Note is an unconditional promise to pay and is therefore a negotiable instrument under Ohio's version of the Uniform Commercial Code, codified in Title 13 of the Ohio Revised Code. *See* Ohio Revised Code § 1303.03(A) (defining "negotiable instrument"). Under the Uniform Commercial Code, the holder of the Note is a person entitled to enforce it. Ohio Revised Code § 1303.31(A)(1). A holder is defined as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Ohio Revised Code § 1301.201(B)(21)(a). When the Note was endorsed in blank by the original obligee Southstar—the negotiable instrument became bearer paper [6] and may be enforced by the person in possession of the instrument. [7] The Note was endorsed in blank

---

**6.** *See* Ohio Revised Code § 1303.10(A) (endorsement is payable to bearer when it is not specific to a payee).

**7.** As this court has noted in a recently reported decision:

Ohio Revised Code § 1303.25(B) [UCC 3–205] defines a blank indorsement as "an indorsement that is made by the holder of the instrument and that is not a special indorsement." A special indorsement "means an indorsement that is made by the holder of an instrument, whether payable to an identified person or payable to the bearer, and that identifies a person to whom it makes the instrument pay[a]ble *sic*. An instrument, when specially indorsed, becomes payable to the identified person and may be negotiated only by the indorsement of that person." Ohio Revised Code § 1303.25(A). *See also* Ohio Revised Code § 1303.10(D) ("An instrument payable to an identified person may become payable to the bearer if it is indorsed in blank pursu-

and the undisputed evidence is Chase acts as the servicing agent for the Trust, including the collection and enforcement of the Note. The undisputed evidence also established that U.S. Bank, as Trustee for the Trust, is in physical possession of the Note (through its agent Chase). *See* Juarez Affidavit, ¶ 3 (doc. 93–2). Because Chase, as servicer and agent for the Trust, is in possession of the Note, it may enforce it on behalf of the Trust.

### C. *Moehring Does Not Have Standing to Object to the Notice of Transfer of the Claim*

■ The court rejects Moehring's objection to the notice of transfer. The claim transfer notices (docs. 72 & 73) are simply evidence of the transfer of the Claim for the bankruptcy court's record and so that parties in interest, such as Moehring, are on notice of who holds the claim. Persons and entities who are not parties to the transfer of the Claim, such as Moehring, do not have standing to object to the notice of the transfer. Only the transferor of the claim could lodge such an objection. Fed. R. Bankr.P. 3001(e)(2); *Viking Associates v. Drewes (In re Olson)*, 120 F.3d 98, 101 (8th Cir.1997) and *In re Lynn*, 285 B.R. 858, 861–63 (Bankr.S.D.N.Y.2002). Moreover, the purpose of the notice of transfer

was only to reflect the change in the Trustee for the Trust holding the Note.[8]

### D. *The Transfer and Assignment of the Note, Mortgage, and Other Loan Documents Does Not Impair U.S. Bank's Ability to Enforce the Note and Mortgage*

■ Moehring makes much ado about the various assignments of the loan documents. However, the assignment of the Mortgage (or the timing of the assignments) is not relevant to the enforcement of the Note against the Moehrings. *See* Debtor Exhibit 3 (mortgage assignment documents). As this court has previously ruled, the requirement that the assignment of a mortgage must be in writing (and that assignment be recorded) is for the benefit of competing lien holders with respect to the property. *Noland v. Wells Fargo Bank, N.A. (In re Williams)*, 395 B.R. 33, 42–43 (Bankr.S.D.Ohio 2008). *See also Bank of N.Y. Mellon Trust Co., N.A. v. Unger*, 2012 WL 1567192, at *5–7 (Ohio Ct.App. May 3, 2012) (mortgagors lacked standing to challenge mortgage assignments) and *Price v. Wells Fargo Bank, N.A. (In re Price)*, 2012 Bankr.LEXIS. 2531, at *8–9 (Bankr.S.D. Ohio June 1, 2012) (issues regarding the assignment of a mortgage does not affect the validity of the note). Ohio law has long provided that mortgages are an incident of the debt or note and follow the debt. This legal prin-

---

ant to [1303.25(A)]."). *In re Smoak*, 461 B.R. 510, 518 (Bankr.S.D.Ohio 2011) (physical possession of bearer paper establishes holder status under the Ohio U.C.C.). *See also Densmore v. Litton Loan Servicing, L.P. (In re Densmore)*, 445 B.R. 307, 310 (Bankr.D.Vt.2011) and *In re Walker*, 466 B.R. 271, 280–81 (Bankr.E.D.Pa.2012) (applying same Uniform Commercial Code law).

8. *See* Federal Rule of Bankruptcy Procedure 3001(e)(2) (providing for an objection by the transferor). Moehring attached a notice of the assignment to her filings opposing the summary judgment motion, apparently to

show fraud or improprieties with the transfer. The clerk's notice (doc. 73), issued under the Rule upon the transferee's filing of the evidence of the transfer (doc. 72), contained scrivener errors. However, absent an objection by the transferor and prejudice, and the court finds none in these circumstances, the notice has no effect upon the validity of the assignment. *In re Wilson*, 96 B.R. 257, 260–61 (9th Cir. BAP 1988). The *Transfer of Claim Other Than For Security* prepared by counsel for U.S. Bank (doc. 72) is consistent with proof of claim 3–3.

ciple has been in place in Ohio at least since 1831. *See Edgar v. Haines*, 109 Ohio St. 159, 141 N.E. 837 (1923) (collecting cases, including *Paine v. French*, 4 Ohio 318 (1831); *U.S. Bank N.A. v. Marcino*, 181 Ohio App.3d 328, 908 N.E.2d 1032, 1038 (Ohio Ct.App.2009) and *Gemini Servs. v. Mortgage Elec. Regis. Sys. (In re Gemini Servs.)*, 350 B.R. 74, 81 (Bankr. S.D.Ohio 2006)). Since U.S. Bank, as Trustee for the Trust (through its servicer and agent Chase), has physical possession of the Note endorsed in blank and the Moehrings granted the Mortgage to secure the Note, the Mortgage is an incident of that debt and issues pertaining to the assignment of the Mortgage do not bear on the enforceability of the Note against the Moehrings or the Mortgage, as an incident of the Note. *See also Smoak*, 461 B.R. at 520–23 (Violation of pooling and servicing agreement with respect to transfer of mortgage loan documents does not impair a holder's ability to enforce a promissory note.).

██ Although allegations of fraud related to the transfers of the loan documents have been leveled by Moehring, no admissible evidence of fraud has been submitted.[9] Moehring attached several exhibits to her memorandum and affidavit opposing U.S. Bank's motion for summary judgment (doc. 103), but the court finds those documents neither admissible for purposes of Fed. R. Civ. Proc. 56 nor helpful even if they were admissible. Moehring's Exhibit 1 is an unauthenticated article purported to be written by an attorney concerning assertions of improprieties that are irrelevant to this case and, in any event, are inadmissible hearsay. Moehring's Exhibit 2 is a March 1, 2012 letter from Peter Biancotti, a Customer Advocate for the Office of the CEO and President of Bank of America, and is inadmissible hearsay as well.[10] Exhibit 4 is apparently a computer "screen shot" produced at a branch of Chase and is intended to show the Moehrings' secured obligation has been "charged off."[11] These documents have not been authenticated by anyone with personal knowledge nor do they meet the business record exception to the hearsay evidentiary rule. *See* Fed.R.Evid. 803(6). Moehring's affidavit is not based upon personal knowledge and is also inadmissible. See Fed.R.Civ.P. 56(c)(4).

9. The court finds this record does not warrant sanctions against prior or current counsel to the Trust or its servicer. Similarly, no evidence exists that any of the aforementioned parties or counsel is in contempt of any order of this court. Even ignoring the procedural problems in such a request [*See* Fed. R. Bankr.P. 7001(9) & 9011(c)], the court does not find a basis to issue a declaratory judgment that proof of claim 3 is "false, fraudulent, and undocumented." All such request for declaratory relief is denied except as to the limited finding concerning the original proof of claim of BOA [3–1].

10. Even if it was admissible, this letter—sent in response to a request from the Moehrings—states that the Moehrings do not have accounts with Bank of America. As previously explained, Bank of America did not hold the Note, except as the Trustee for the Trust. The beneficial interest of the Note and Mortgage belong to the Trust. Bank of America only acted in its fiduciary role as a Trustee and a separate servicer administered the Note for the Trust. Therefore, it is completely consistent with the record that Bank of America would indicate the Moehrings did not have an account with Bank of America. The same analysis applies with respect to the March 22, 2012 letter from U.S. Bank. However, the inadmissible screen shot from the Mason, Ohio Chase bank branch (Exh. 4, doc. 103) does show the subject mortgage loan account, which is consistent with Chase being the servicer of the loan.

11. Of course, a charge off of a loan by a lending institution does not mean that the obligors have been released from the liability.

**E. *The Materials Submitted Establish the Proper Calculation of Interest Due***

Another issue is whether proof of claim 3–3 properly calculates interest due upon the Note. In her initial objection filed on June 23, 2011, Moehring indicated that the claim "fails to indicate how the accrued interest was calculated." (doc. 37). Moehring took the position that, without such detail, the interest amounts should be disallowed. The current proof of claim [3–3] delineates all accrued interest through the petition date of November 11, 2010 and establishes that interest continues to accumulate at 11.875% per annum. The proof of claim [3–3] also shows that the Moehrings accumulated $618.27 in late charges [Movant Exhibit B, ¶ 10]. Although unnecessary, the movant has provided the court with the specific calculations to determine this accrued interest figure in its summary judgment filings (doc. 93, p. 3). The total amount of the claim is calculated at $46,127.32.

 The Trust has established the amount of its claim through the proof of claim and other evidentiary materials, and Moehring has not submitted admissible evidence to dispute the amount of the claim, including the Trust's calculation of interest due. The proof of claim is entitled to prima facie evidence as to its validity and amount pursuant to Federal Rule of Bankruptcy Procedure 3001(f). *In re Burkett,* 329 B.R. 820, 826–27 (Bankr.S.D.Ohio 2005). Moehring, as the party objecting to the claim, had the initial burden of going forward with evidence to refute the claim as set forth in the proof of claim. *Id.* Moehring has not provided any admissible evidence to rebut the proof of claim or the

calculations provided by the creditor and, therefore, there is no issue of material fact in dispute between U.S. Bank and Moehring regarding the amount of interest claimed by the Trust or as to the calculation of the claim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (Once the moving party has established the elements of its claim through a motion for summary judgment, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'). Therefore, as the movant seeking summary judgment, U.S. Bank has met its burden under Fed.R.Civ.P. 56 and is entitled to summary judgment as to the amount due it on the Claim.

**F. *The Original Proof of Claim Was Filed by BOA Subsequent to the Transfer to U.S. Bank***

 The original proof of claim filed by BOA on January 20, 2011 [3–1] could not have been an allowed secured claim because BOA transferred all interests in the Note and Mortgage prior to the time that the proof of claim was filed. However, claim 3–3, filed by U.S. Bank, is an allowed secured claim that must be paid in full consistent with Moehring's confirmed plan.

Bankruptcy Rule 3001(e) governs the filing of transferred claims. Subsection (1) states that "[i]f a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee." [12] The claim [3–

---

**12.** BOA and U.S. Bank each would appear to qualify as an "indenture trustee" under Bankruptcy Rule 3001(e)(1) during the time that each was the trustee under the loan docu-

ments. *See* 11 U.S.C. § 101(28) & (29); Bankruptcy Rule 3003(c)(5) (applicable to Chapters 9 & 11) ("An indenture trustee may file a claim on behalf of all known or un-

1] was transferred from BOA to U.S. Bank through the Assignment and Assumption Agreement on December 30, 2010, after Moehring filed her bankruptcy petition but before any proof of claim was filed. Juarez Affidavit, ¶ 7; Movant Exhibit 4. The proof of claim was filed by BOA on January 20, 2011, 21 days after it transferred its interests in the Note and Mortgage to U.S. Bank. Under Rule 3001(e)(1), the proof of claim was required to be filed by U.S. Bank, not BOA, since at that time U.S. Bank was the transferee, indenture trustee and holder of the claim. BOA's trustee responsibilities terminated on December 30, 2010 when it assigned its rights to U.S. Bank. Thus, the proof of claim was filed by the wrong entity on January 20, 2011.[13]

Does U.S. Bank's filing on May 17, 2012 attempting to amend BOA's original January 20, 2011 proof of claim relate back to and cure the original BOA filing? Judge Leif Clark addressed this issue under similar facts and cogently rejected any such argument. *See In re Ellington,* 151 B.R. 90 (Bankr.W.D.Tex.1993).

In *Ellington,* the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of First Republic Bank of El Paso ("First Republic") and sold First Republic's assets, including notes, liens, and claims to NCNB Texas National Bank ("NCNB"). After the sale of the assets to NCNB and prior to the proof of claim bar date, an attorney filed a proof of claim in the debtor's Chapter 7 bankruptcy case in the name of First Republic. A different attorney later entered his appearance for NCNB and filed an amended proof of

claim for NCNB, which described NCNB as "a successor by merger to First Republic." The Chapter 7 trustee later objected to the original proof of claim filed under the name of First Republic, serving only the attorney who filed the original proof of claim. Neither that attorney nor anybody else responded to the trustee's claim objection. Several years passed and the counsel who filed the "amended proof of claim" for NCNB inquired as to why it had not received a distribution from the bankruptcy estate and discovered that the proof of claim originally filed in the name of First Republic had been disallowed. NCNB's counsel filed a motion seeking reconsideration of the disallowance of the claim, to which several creditors objected. Among other arguments, NCNB argued that its amended proof of claim cured the defect in the original filing under the name First Republic.

The court emphasized that NCNB was not a successor bank to First Republic and rejected the argument that the amended proof of claim cured the fact that the original proof of claim was filed in the name of the transferor of the claim, rather than in the name of the transferee, stating:

> There is a dearth of case law on whether an entity which has sold its claim is a "creditor" permitted to file a proof of claim. This is not surprising, because logic dictates that if one does not own a claim against the debtor, one may not file a claim against the debtor. The defunct First Republic was not a "creditor" of the Debtor on August 16, 1988, and therefore the First Republic Proof

---

known holders of securities issued pursuant to the trust instrument under which it is trustee."); *Miller v. Greenwich Capital Financial Products, Inc. (In re Amer. Bus. Fin. Prods., Inc.),* 384 B.R. 66, 78–79 (Bankr.D.Del.2008) and Levitin & Twomey, *Mortgage Servicing,* 28 Yale J. On Reg. 1 (Winter 2011).

**13.** The partial amendment to the proof of claim filed on September 13, 2011 was also erroneously filed by BOA rather than U.S. Bank.

of Claim was not "properly filed," as First Republic could not legitimately even sign a proof of claim representing that it owned a claim against the estate (for it did not).

Absent a claim properly filed *by NCNB* (the owner of the claim), NCNB had no proof of claim to amend.

\* \* \* \*

Therefore, the court concludes that since the First Republic Proof of Claim was improperly filed, it follows, *a fortiori*, that the Amended Proof of Claim offered by NCNB was ineffective, as it had nothing to amend.

*Id.* at 95 (footnote and citation omitted). The court stated that "[t]he problem here is that Party A cannot purport to amend Party B's claim. And if party B does not even have a claim, then Party A certainly cannot purport to 'amend' it." *Id.* at 95 n. 9.

The logic and conclusion of *Ellington* apply. Since BOA was not the holder of the second mortgage claim when the proof of claim was filed, it could not file a valid proof of claim as the creditor or an indenture trustee. At that point, it was not a trustee as to the second mortgage claim. Accordingly, the later amendment in 2012 by U.S. Bank could not amend that proof

of claim because there was no proof of claim to amend.[14]

G. *U.S. Bank's Secured Claim Must Be Paid in Accordance with the Terms of Moehring's Confirmed Chapter 13 Plan*

■ The filing error concerning claim 3–1, the original filed claim by BOA, does not affect U.S. Bank's right to be paid under Moehring's confirmed Chapter 13 Plan, nor does it impact its mortgage lien on Moehring's residence. Thus, the error is not of significant consequence to U.S. Bank's treatment in this case nor to its rights outside of this bankruptcy case.

■ First, secured creditors need not file proofs of claim. Bankruptcy Rule 3002(a) provides that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed...." This rule requires that unsecured creditors and equity holders must file proofs of claim or interest to have an allowed claim or interest, but it is silent as to secured creditors. *See* Fed. R. Bankr.P. 3002(a) and *In re Robert,* 171 B.R. 881, 886 (Bankr.N.D.Cal.1994).[15]

Whether secured creditors can receive distributions under Chapter 13 plans if they have not filed proofs of claim within the time set by Bankruptcy Rule 3002(c)

**14.** U.S. Bank's May 17, 2012 proof of claim filing filed as an amendment to BOA's proof of claim filed on January 20, 2011 would also be untimely and disallowed *if it was an unsecured claim* since the proof of claim filing bar date for unsecured claims was March 14, 2011. *See* doc. 11 and Bankruptcy Rule 3002(c). While untimely proofs of claim on unsecured claims may be allowed under other chapters of the Bankruptcy Code, late proofs of claim filed by unsecured creditors are not allowed in Chapter 13 cases. *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *In re Lang,* 196 B.R. 528 (Bankr. D.Ariz.1996); *In re Chavis,* 47 F.3d 818 (6th Cir.1995); *United States v. Simon (In re Burn-*

*ham, Connolly, Oesterle and Henry),* 98 F.3d 1341, 1996 WL 580475, at \*4 (6th Cir.1996) (table decision); *In re Windom,* 284 B.R. 644, 647 (Bankr.E.D.Tenn.2002); *In re Nyeste,* 273 B.R. 148 (Bankr.S.D.Ohio 2001). *See also In re Boudinot,* 237 B.R. 413, 417 (Bankr. S.D.Ohio 1999) (no excusable neglect for late claims in Chapter 12).

**15.** The Advisory Committee Note to Rule 3002 provides that "a secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502."

has been the subject of considerable debate and conflicting decisions. *See* Keith Lundin & William H. Brown, Chapter 13 Bankruptcy 4th edition § 282.1, Sec. Rev. Nov. 24, 2009, www.Ch13online.com; and Drake, Bonapfel & Goodman, *Chapter 13 Practice & Procedure* § 8:2 (2012). The following decisions concluded that a secured creditor must timely file a proof of claim under the bar date set by Bankruptcy Rule 3002(c) in order to receive plan distributions: *In re Kelley*, 259 B.R. 580, 584–85 (Bankr.E.D.Tex.2001); *In re Dennis*, 230 B.R. 244 (Bankr.N.J.1999); *In re Macias*, 195 B.R. 659, 660 (Bankr. W.D.Tex.1995) and *In re Gonzalez*, 295 B.R. 584 (Bankr.N.D.Ill.2003).[16] Other cases held that since Bankruptcy Rule 3002(a) does not require secured creditors to file proofs of claim, they do not need to have a timely filed proof of claim in order to receive distributions under a Chapter 13 plan. *See In re Babbin*, 160 B.R. 848, 849 (D.Colo.1993); *Strong v. United States Dep't of the Treasury (In re Strong)*, 203 B.R. 105, 112 (Bankr.N.D.Ill.1996) and *In re Robert*, 171 B.R. 881, 886 (Bankr. N.D.Cal.1994).

In his *Hudson* decision, Judge Gregg exhaustively examined the interplay between the plan confirmation process and the claims allowance process, the determination of the amount of secured claims, the treatment of secured claims under Chapter 13 plans, and the modification of liens in Chapter 13 cases, including the role of adversary proceedings with respect to those determinations. Judge Gregg determined that secured creditors need not file proofs of claims by the bar date set by Rule 3002(c), but noted that at some point it may become too late to file a proof of claim and have it allowed in order to receive distributions under a confirmed Chapter 13 plan, stating:

> There is a point in time when it will be too late for a secured creditor to file a proof of claim and hold an allowed claim. After this point in time, a secured creditor will not be able to receive any distribution from the estate. The debtor will have received a chapter 13 discharge, § 1328(a), which will discharge all unsecured debts, § 1328(c), thereby eliminating all in personam liability to the secured creditor, and which imposes an injunction against collecting the discharged debt, § 524(a). The secured creditor is then limited to its in rem lien rights in the collateral.

*In re Hudson*, 260 B.R. 421, 438 (Bankr. W.D.Mich.2001). The court also noted that when the debtor provides for payment of a secured debt in the debtor's plan, but the secured creditor does not file a proof

---

**16.** These decisions generally find that the Chapter 13 trustee is only to make distributions to creditors whose claims have been allowed, Bankruptcy Rule 3002(c) does not distinguish between unsecured and secured claims in setting the time for filing proofs of claim in Chapter 13 cases and even though they are not required to file proofs of claim, if they do filed claims they must file them by the Rule 3002(c) bar date, and Code § 502(b)(9) provides for disallowance of claims "not timely filed"—thus, concluding that if a secured creditor does not file a claim within the time set by Rule 3002(c) in a Chapter 13 case, the secured creditor cannot have an "allowed" claim, and, therefore, is not permitted to receive distributions under the plan. Some of these decisions, such as *In re Alderman*, 150 B.R. 246, 252 (Bankr.D.Mont.1993), at least in part base their conclusion on not being able to distribute funds under these circumstances to secured creditors on the language of Bankruptcy Rule 3021 that a trustee can only "make distributions to creditors whose claims have been allowed." However, a major bankruptcy treatise takes issue with courts' reliance on Bankruptcy Rule 3021 in this regard and asserts that Bankruptcy Rule 3021 was only intended to deal with distributions by trustees under Chapter 11 of the Bankruptcy Code. *See Norton Bankruptcy Law & Practice 3d*, § 146:5, n. 19 (2012).

of claim, "the debtor must continue to pay the full plan payment. The trustee, because payment cannot be made to the secured creditor because no allowed claim exists, must retain the funds for future payment to the secured creditor if a claim is subsequently filed." *Id. See also Bibler v. SN Servicing Corp. (In re Bibler),* 310 B.R. 308, 311–12 (Bankr.W.D.Mich.2004).

Another court followed Judge Gregg's lead in *Hudson* in refusing to apply the Rule 3002(c) bar date to secured claims in Chapter 13 cases, allowing the proof of claim to be filed and allowed so long as the Chapter 13 trustee could still make distributions to the secured creditor, explaining that:

> While agreeing with the determination by the *Macias* [*In re Macias,* 195 B.R. 659 (Bankr.W.D.Tex.1995) ] court that before a secured claim may be paid in a Chapter 13 plan, a proof of claim must be filed by or on behalf of the secured creditor, this Court must disagree with the additional ruling that the Rule 3002(c) bar date applies to secured claims. Rather than imposing a firm deadline where none exists by statute or rule, the better alternative, in this Court's view, is simply to leave the blank slate blank. Since the creditor and the debtor each have a stake in seeing the secured claim paid as provided in the plan, both usually take action early in the case to file the claim or verify that it is filed. In those rare cases where both the creditor and the debtor slip up, the trustee, who is charged with administering a confirmed plan according to its terms, can make the debtor aware of the oversight, the creditor can be contacted, and a claim can be filed. In the meantime, there is no reason to torpedo the confirmed plan by imposing an artificial deadline for filing proof of the secured claim, the terms of which have already been estab-

lished and allowed by confirmation. Once the claim is filed, even if after the Rule 3002(c) date, the trustee must pay it according to the plan even if the payments to that creditor commence later than to other secured and priority creditors.

*In re Mehl,* 2005 WL 2806676, at *3 (Bankr.C.D.Ill. Oct. 25, 2005).

U.S. Bank's claim should be allowed and it should receive distributions under Moehring's plan because Moehring's Plan provides for full payment of U.S. Bank's claim; U.S. Bank has established that it is the holder of the Note secured by the Mortgage and, therefore, is a secured creditor and U.S. Bank has filed a proof of claim through which the Chapter 13 trustee can determine the appropriate distributions to U.S. Bank under the Plan.

██ First, § 1326(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan" and § 1326(a)(2) provides that "the trustee shall distribute any such payment [made by the debtor to the Chapter 13 trustee] in accordance with the plan as soon as practicable." Therefore, a Chapter 13 trustee is required to disburse payments to secured creditors in accordance with the confirmed plan. *In re Babbin,* 160 B.R. 848, 849 (D.Colo.1993); *In re Rome,* 162 B.R. 872, 875 (Bankr.D.Colo. 1993) ("[T]he Chapter 13 Trustee is bound to distribute funds to secured creditors in accordance with a confirmed plan even absent a proof of claim being timely filed."). This case is analogous to *In re Robert* in which the court allowed a secured claim in favor of the Internal Revenue Service "[b]ecause Debtors scheduled secured debt owed to the IRS ... and Debtors' confirmed plan provides for payment of the IRS's allowed secured claim...." 171 B.R.

881, 886 (Bankr.N.D.Cal.1994). Moehring scheduled the second mortgage claim currently held by U.S. Bank as a secured debt and her confirmed Chapter 13 Plan provides for payment in full of the U.S. Bank claim. Both Moehring's schedules and the Plan confirm that U.S. Bank's claim should be allowed and paid as provided by the Plan.[17]

Section 1327(a) makes a confirmed plan binding on the debtor and all creditors. *See* 11 *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 532 (6th Cir.2000). *In re Miller*, 428 B.R. 791, 797 (Bankr.S.D.Ohio 2010); *In re McLemore*, 426 B.R. 728, 734 (Bankr.S.D.Ohio 2010); and *Pees v. CitiMortgage, Inc. (In re Crum)*, 479 B.R. 734, 741 (Bankr.S.D.Ohio 2012). In a case dealing with a Chapter 13 trustee's attempt to reclassify a claim secured by a motor vehicle from secured to unsecured after the debtor defaulted on payments and the secured creditor repossessed the vehicle following confirmation of the debtor's plan, the Sixth Circuit ruled that if a claim is classified as secured in a Chapter 13 plan and the plan provides for payment of that claim as a secured claim, once the plan is confirmed, the debtor or trustee cannot change the classification and treatment of that claim. *Ruskin v. DaimlerChrysler Servs. N. Am. (In re Adkins)*, 425 F.3d 296, 302 (6th Cir.2005). Similarly, the debtors and Chapter 13 trustee could not post-confirmation avoid a secured creditor's lien when the confirmed Chapter 13 plan provided for surrender of the property to the secured creditor, with any resulting deficiency balance to be paid as an unsecured claim. *CitiMortgage*, 479 B.R. at 744–45. Moehring's Plan provides for payment in full of the U.S. Bank claim and the Plan has preclusive effect once confirmed, with the Chapter 13 Trustee being duty-bound under the Plan and § 1326(c) to make distributions to U.S. Bank as a creditor provided for in the Plan.

Second, as previously noted, U.S. Bank has established that it is the holder of the Note and, thereby, the holder of the second mortgage claim originally scheduled in the name of EMC Mortgage Corporation. While U.S. Bank could not amend BOA's proof of claim because BOA did not hold a claim on the date that it filed its proof of claim, U.S. Bank's filing on May 17, 2012, with the attached Note, Mortgage and Assignment of Mortgage, may be allowed as an independent secured proof of claim from which the Chapter 13 trustee can make disbursements. The May 17, 2012 proof of claim filing by U.S. Bank provides a basis upon which the Chapter 13 trustee may make distributions to U.S. Bank under the terms of Moehring's Plan. The Chapter 13 trustee has not objected to paying U.S. Bank or the holder of the second mortgage claim.

Even if U.S. Bank did not have an allowed secured claim in Moehring's

**17.** Some authorities contend that a plan which provides for the specific treatment of a secured debt effectively serves as an informal proof of claim filed by the debtor, thereby satisfying any requirement for a proof of claim to be filed in order to allow a secured claim. *See* Drake, Bonapfel, & Goodman, *Chapter 13 Practice & Procedure* § 8:2 (2012) and *Norton Bankruptcy Law & Practice 3d*, § 146:5 (2012). *In re Mehl*, 2005 WL 2806676, at *2 (Bankr.C.D.Ill. Oct. 25, 2005) ("This Court requires Chapter 13 debtors to provide for secured claims in the plan by specifically stating the proposed amount of the claim and the rate of interest to be paid. With few exceptions, once the plan is confirmed, the Chapter 13 trustee has all of the information that he needs to commence payments to secured creditors shortly after confirmation. Thus, where a secured claim is properly provided for in the plan and the plan is confirmed, the proof of claim is perfunctory.").

bankruptcy, U.S. Bank's lien would still survive the bankruptcy and U.S. Bank would be entitled to enforce the Mortgage against the property. Absent a lien being avoided in the bankruptcy case under applicable law,[18] liens generally survive bankruptcy. *See Dewsnup v. Timm,* 502 U.S. 410, 417–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Talbert v. City Mortgage Svcs. (In re Talbert),* 344 F.3d 555, 559–61 (6th Cir. 2003); and *In re Penrod,* 50 F.3d 459, 461–62 (7th Cir.1995). As stated in *Hares v. Sage Fin. Ltd. (In re Hares):*

> Failure to file a proof of claim does not affect the property interest created by a lien. In fact, § 506(d) specifically recognizes this, stating that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless ... (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." 11 U.S.C. § 506(d)(2).

431 B.R. 796, 799–800 (Bankr.S.D.Ohio 2010). Thus, a secured creditor need not file a proof of claim in order to preserve its lien. *SLW Capital, LLC v. Mansaray–Ruffin (In re Mansaray–Ruffin),* 530 F.3d 230, 235 n. 4 (3rd Cir.2008); *In re Tarnow,* 749 F.2d 464, 465 (7th Cir.1984); *In re Burrell,* 85 B.R. 799, 800 (Bankr.N.D.Ill. 1988). *See also Univ. Amer. Mortgage Co. v. Bateman (In re Bateman),* 331 F.3d 821 (11th Cir.2003) (secured creditor's arrearage claim and lien survive a Chapter 13 bankruptcy despite the Chapter 13 plan providing differently, and the creditor may enforce that claim through its rights under its mortgage upon termination of the stay provided by Code § 362(a)) and *Bibler,* 310 B.R. at 312 (secured creditor may choose not to subject itself to the bankruptcy and rest on its state law in rem rights and enforce those in the state court upon plan completion).

Moehring will not be prejudiced by the Chapter 13 Trustee's distributions to U.S. Bank because the evidence establishes that U.S. Bank is the holder of the Note; Moehring's schedules and the Plan acknowledge and provide for the payment in full of the second mortgage claim held by U.S. Bank; and, if unpaid by this Chapter 13 plan, the mortgage lien held by U.S. Bank on Moehring's real property would result in the claim having to be paid outside the bankruptcy to avoid possible foreclosure of the lien.

## V. Conclusion

For the foregoing reasons, the court grants summary judgment to U.S. Bank. U.S. Bank's claim is allowed as a secured claim in the amount of $46,127.32 and all relief sought through Moehring's objections and filings (docs. 37, 71 & 77) is denied. The court will issue an order consistent with this decision.

---

18. For example, judgment liens may be avoided pursuant to § 522(f) if they impair a debtor's exemption. *See* 11 U.S.C. § 522(f)(1) and *In re Brinley,* 403 F.3d 415 (6th Cir.2005). In addition, wholly unsecured mortgages may be avoided in a Chapter 13 bankruptcy case. *In re Lane,* 280 F.3d 663 (6th Cir.2002) (mortgage not secured by any equity can be avoided in a Chapter 13, notwithstanding the language in 11 U.S.C. § 1322(b)(2)). *See also Hares v. Sage Fin. Ltd. (In re Hares),* 431 B.R. 796, 800 n. 5 (Bankr.S.D.Ohio 2010) ("Avoidance of a lien in a bankruptcy case can only be effectuated by exercise of judicial authority pursuant to the provisions of Chapter 5 of the Bankruptcy Code.").