Filed 11/21/14  Whitney v. Citibank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOHN WHITNEY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITIBANK, N.A. ET AL., <br><br> Defendants and Respondents. | B250436 <br><br> (Los Angeles County <br> Super. Ct. No. BC490426) <br><br> ORDER MODIFYING OPINION; <br> NO CHANGE IN JUDGMENT; <br> PETITION FOR REHEARING DENIED |

THE COURT:

It is ordered that the opinion filed herein on October 28, 2014, and not certified for publication, be modified as follows:

1.  On page 8, paragraph 3, line 4, after the word "remains" add footnote 5, which is to read as follows:

[5] Even if appellant's bankruptcy plan operated to discharge his personal liability on the loan, the bankruptcy discharge only prevented creditors from enforcing the promissory note against appellant, the lien on the property remains, and if appellant wishes to retain the property his obligation to pay remains.  In this context, the absence of personal liability for a borrower on the debt does not alter the existence of the obligation. (See *Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531, 1539-1540 [although the borrower may escape personal liability on a home loan debt, after the borrower defaults the lender may nonetheless foreclose on the deed of trust].)  Absent a

lien being avoided in the bankruptcy case under applicable law, liens generally survive bankruptcy.  (See *Dewsnup v. Timm* (1992) 502 U.S. 410, 417–420.)

2.  On page 9, line 2, after the word "invalid" add footnote 6, which is to read as follows:

[6] Indeed, even if none of the respondents is found to be "true" owner of the loan, the lien on the property remains.  Failure to file a proof of claim in the bankruptcy proceeding does not affect the property interest created by a lien.  (See *In re Moehring* (Bankr. S.D.Ohio 2013) 485 B.R. 571, 585.)  Because the debt was listed in appellant's bankruptcy schedules, the true owner of the loan (even if it were some entity other than the respondents) may participate in appellant's bankruptcy estate without filing a proof of claim.  (See *ibid.* ["[A] secured creditor need not file a proof of claim in order to preserve its lien."]; 11 U.S.C. § 1111(a) ["A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed . . . ."].)  Moreover, even if the respondents' claims were disallowed, the "true" owner may be permitted to file a late proof of claim.  (See *In re Moehring, supra,* 485 B.R. at pp. 581-585.)

Adding footnotes 5 and 6 will require renumbering all subsequent footnotes.

Appellant's petition for rehearing is denied.  The foregoing does not change the judgment.

| PERLUSS, P. J. | WOODS, J. | SEGAL, J. (Assigned) |
|---|---|---|

2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOHN WHITNEY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITIBANK, N.A. ET AL.,<br><br>    Defendants and Respondents. | B250436<br><br>(Los Angeles County<br>Super. Ct. No. BC490426) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Klapach & Klapach and Joseph S. Klapach; Kelley Semmel and Paul Kelley for Plaintiff and Appellant.

Severson & Werson (San Francisco) and Jan T. Chilton; Severson & Werson (Irvine) and Kerry W. Franich for Defendants and Respondents.

_____

Appellant John Whitney appeals from the judgment entered upon the trial court's order sustaining respondents Citibank N.A. et al.'s demurrer without leave to amend. Appellant's second amended complaint ("SAC") alleged claims for quiet title to his home and declaratory relief. Here, appellant argues that his residential mortgage was not properly securitized and he is entitled to know to whom he owes his debt. For the reasons set forth below, the trial court's order sustaining respondents' demurrer without leave to amend is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I. Factual Background

On January 25, 2007, John Whitney ("appellant") executed a promissory note ("the Note") of $1 million in favor of Wells Fargo Bank ("Wells Fargo") on his residence in Los Angeles. The Note defined the note holder as Wells Fargo, "or anyone who takes this Note by transfer and who is entitled to receive payments under this Note." The Note was secured by a deed of trust which served as a lien against appellant's home. The deed of trust was recorded in the Los Angeles County recorder's office.

On May 31, 2007, Wells Fargo securitized[2] the Note. On June 4, 2007, the Bear Stearns ARM Trust 2007-4 ("BSARM 2007-4") Prospectus was filed with the Securities

---

[1]    The facts are taken from appellant's SAC. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [we assume the truth of the plaintiff's pleaded facts when reviewing a judgment of dismissal following a sustained demurrer].)

[2]    "Although a mortgage securitization transaction is extremely complex and varies somewhat depending on the type of entity undertaking the securitization, the core of the transaction is relatively simple. [¶] First, a financial institution (the 'sponsor' or 'seller') assembles a pool of mortgage loans. The loans were either made ('originated') by an affiliate of the financial institution or purchased from unaffiliated third-party originators. Second, the pool of loans is sold by the sponsor to a special-purpose subsidiary (the 'depositor') that has no other assets or liabilities. This is done to segregate the loans from the sponsor's assets and liabilities. Third, the depositor sells the loans to a passive, specially created, single-purpose vehicle ('SPV'), typically a trust in the case of residential mortgages. The SPV issues certificated securities to raise the funds to pay the

2

and Exchange Commission. The prospectus described how the Note would be transferred. First, Wells Fargo would originate the Note and then transfer the Note and all rights under the deed of trust to EMC Mortgage Corporation ("EMC"), the seller or sponsor. "EMC would transfer the Note, and all rights under the Deed of Trust, to Structured Assets Mortgage Investments II, Inc. ('SAMI'), the depositor, through a Mortgage Loan Purchase Agreement (MLPA)" (Loan Agreement). Finally, "SAMI would transfer the Note, and all rights under the Deed of Trust, to Citibank, as Trustee BSARM 2007-4, under the terms set forth in a Pooling and Servicing Agreement" (PSA). On May 31, 2007, Citibank paid EMC and EMC paid Wells Fargo, in full, for the Note.

In February 2009, appellant defaulted on the Note. Wells Fargo recorded a Notice of Default. On August 3, 2009, appellant filed a voluntary Chapter 11 bankruptcy petition.[3] Respondent Wells Fargo, who purported to act as the "servicer" for respondents EMC Mortgage Corporation submitted a proof of claim in the bankruptcy proceedings seeking to recover on Note. No other entity submitted a proof of claim on the Note. In September 2011, the creditors approved a plan of reorganization where "the pre-petition . . . debt under the Note was discharged, and replaced with a new indebtedness." The amount owed did not change.

Thereafter after the bankruptcy court confirmed appellant's reorganization plan, which included funds set aside to pay the Note, appellant asserts it discovered that Wells Fargo's claim under the Note was allegedly fraudulent. As a result appellant filed a motion to modify the bankruptcy plan so that he could either bring an adversary action or

---

depositor for the loans . . . . The securities can be . . . issued directly to the depositor as payment for the loans. The depositor then resells the securities . . . [and] uses the proceeds of the securities sale (to the underwriter or the market) to pay the sponsor for the loans." (Levitin & Twomey, *Mortgage Servicing* (2011) 28 Yale J. on Reg. 1, 13-14.)

[3]     Pursuant to a request of appellant, this court has taken judicial notice of the bankruptcy court transcript. (See Cal. Rules of Court, rule 8.252 [courts may take judicial notice of "court records and official acts of state agencies[.]" (*Arce v. Kaiser Found. Health Plan, Inc.* (2010) 181 Cal. App. 4th 471, 482].)

assert an objection to respondents' claim in bankruptcy.   At the hearing on the motion the bankruptcy court indicated that in its view that appellant's motion appeared to call for "lawsuits" and that it would "be inappropriate for those things to be filed in this Court. I'm not sure this Court could even rule on them after *Stern v. Marshall* [564 U.S. __, __, 131 S.Ct. 2594]  So I'm assuming … they deal completely with state law issues, you know California Business and Professions Code."  The court refused to refer the matter to an adversary proceeding, ruling, "that's not going to happen here because these are the types of claims that I don't think this Court has jurisdiction to rule on under *Stern v. Marshall*…[¶] its all these state law issues, and you need to take it out to State Court where it belongs."[4]

---

[4]     We do not agree with the bankruptcy court's conclusion that it lacked jurisdiction to refer appellant's challenge to the validity of the respondents' proof of claim to an adversary proceeding in the Bankruptcy Court.  Bankruptcy Courts routinely rule on the validity of competing claims of interest in the assets and property in the bankruptcy estate even where the determination involves the application of state law.  (See e.g., *Warnick v. Yassian (In re Rodeo Canon Development Corporation* (9th Cir. 2004) 362 F.3d 603, 605-606 [holding that bankruptcy court, applying the California partnership law, should resolve competing claims to ownership of property in an adversary proceeding prior to allowing the sale of the property]. )  In addition, in our view, *Stern  v. Marshall* (2011) 564 U.S. __, ___, 131 S.Ct. 2594, did not deprive the bankruptcy court of jurisdiction over these matters.  The Supreme Court recently explained its holding in *Stern,* "even though bankruptcy courts are statutorily authorized to enter final judgment on a class of bankruptcy-related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims. *Stern* did not, however, decide how bankruptcy or district courts should proceed when a "*Stern* claim" is identified." (*Executive Benefits Ins. Agency v. Arkison* ___ U.S. ___, ___, 134 S.Ct. 2165, 2168.  In *Executive Benefits*, the Court held that "when, under *Stern 's* reasoning, the Constitution does not permit a bankruptcy court to enter final judgment on a bankruptcy-related claim, the relevant statute nevertheless permits a bankruptcy court to issue proposed findings of fact and conclusions of law to be reviewed de novo by the district court." (*Ibid.*)

Moreover, in resolving this appeal, we have not determined the merits of appellant's objection to the validity of respondent's proof of claim in the bankruptcy proceedings.

4

In the motion, appellant also sought to suspend his mortgage payments. Without opposition from Wells Fargo or the other creditors, the bankruptcy court granted motion on the condition that appellant make the payments required by the reorganization plan under the Note to the trust account of his bankruptcy counsel. Appellant has made all of the required payments.

Thereafter appellant filed this instant action, alleging that respondents violated the PSA and thus, any transfers of the Note and Deed of Trust to Citibank as trustee of BSARM 2007-4 were void. Appellant claimed that respondents violated the PSA because "[e]ven if the Note was actually delivered to Citibank as trustee of BSARM 2007-4 on or about May 31, 2007 it is evident from [the attached exhibit] that it was neither endorsed to Citibank or in blank, and that there were no endorsements to EMC, or to SAMI, rendering the transfer void. [¶] The Deed of Trust was never assigned to Citibank as trustee of BSARM 2007-4, and no assignment was recorded as required by the PSA."

Appellant's challenge primarily relies on an alleged defect in the chain of title for the Note. Specifically, appellant points to an assignment recorded on June 19, 2009, in the Los Angeles County Recorder's Office. In this instrument, Wells Fargo assigned its interest under the deed of trust to EMC. Appellant contends Wells Fargo had nothing to assign to EMC "because whatever rights it had in the Note and Deed of Trust had been extinguished by payment as part of the BSARM 2007-4 securitization process."

## II. Procedural Background

Based on these allegations, appellant filed a complaint alleging the following causes of action: (1) quiet title, (2) declaratory relief, and (3) fraud/misrepresentation. Respondents filed a demurrer to appellant's first amended complaint. The trial court sustained the demurrer as to the quiet title and declaratory relief causes of action with leave to amend, but sustained the fraud/misrepresentation cause of action without leave to amend.

5

Appellant then filed his SAC.  Respondents filed a demurrer to appellant's SAC. In support of their demurrer, respondents argued that appellant: (1) failed to plead sufficient facts to support the quiet title and declaratory relief causes of action; (2) has not tendered the amounts due under the Note and Deed of Trust; and (3) lacked standing to challenge the assignment of the Note.  The trial court sustained the demurrer without leave to amend.  This appeal followed.

## *DISCUSSION*

### I. *Standard of Review*

This court applies a *de novo* standard of review to a trial court's order of dismissal following an order sustaining a demurrer.  (*Comm. For Green Foothills v. Santa Clara Cnty. Bd. of Supervisors* (2010) 48 Cal. 4th 32, 42.)  Under *de novo* review, this court exercises its "independent judgment about whether the complaint states a cause of action as a matter of law." (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  We assume all material facts in the complaint are properly pleaded.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)  We may also consider matters that have been judicially noticed.  (Code Civ. Proc., § 430.30, subd. (a); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.)  However, we do not consider "contentions, deductions or conclusions of fact or law." (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.)  Nor do we consider "the available evidence, the plaintiff's ability to prove the allegations in the complaint or other extrinsic matters." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922.)

When a trial court sustains a demurrer without leave to amend, this court applies an abuse of discretion standard to determine whether there is a reasonable possibility the defects in the complaint can be cured by amendment.  (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at p. 966.)  To show abuse of discretion, it is the plaintiff's burden to show he or she can amend the complaint.  (*Roman v. City of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

## II. Appellant Failed to Plead Sufficient Facts to Support His Declaratory Relief Cause of Action Against Respondents

### A. Actual Controversy

Appellant seeks a judicial declaration as to which party is entitled to receive the funds set aside in bankruptcy for the payment of the Note. Appellant argues that declaratory relief "will determine what the bankruptcy court should do with those funds."

Under Code of Civil Procedure section 1060, "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights. . . ." (Code Civ. Proc., § 1060.) The threshold requirement for declaratory relief is an actual, present controversy between the parties. (Code Civ. Proc., § 1060; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.) "Unless all the allegations of a complaint show that an actual controversy does exist between the parties," the complaint is subject to general demurrer. (*Amer. Mission Army v. City of Lynwood* (1956) 138 Cal.App.2d 817, 819.) Whether appellant's claim presents an "actual controversy" is a question of law this court reviews *de novo*. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 606.)

Here, appellant attempts to construct a current controversy between himself and respondents by arguing that he deserves the right to know to whom he owes money. Appellant states that respondents asserted they own the Note and are entitled to receive the money that has been set aside in bankruptcy. However, the alleged facts do not indicate that appellant has suffered prejudice or will suffer prejudice in the future because of the current assignments and transfers of the Note. Given that appellant has been making his payments into the trust account of his bankruptcy counsel, he has not paid the wrong entity. Nor is there any indication that the transfer of the Note has changed appellant's obligations to repay his debt.

7

With respect to a probable future controversy relating to the legal rights and duties of the parties, the controversy must at least be "ripe" to be the subject of a declaratory relief claim. (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885.) "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) A ripe "'controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (*Id*. at p. 171.)

Appellant does not dispute the existence of the secured home loan debt. Within the deed of trust attached to the SAC, there is a specific provision that states the lender may transfer the promissory note at any time without prior notice of the transfer to appellant. Moreover, "[b]ecause a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor." (*Herrera v. Federal Nat. Mortg. Assn.* (2012) 205 Cal.App.4th 1495, 1507 ["As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note."].) No other parties (other than respondents) have come forward seeking payment on the Note. Nor has appellant been asked to pay more than what he owes. (See *Bernardi v. JPMorgan Chase Bank, N.A.* (N.D.Cal. 2012) 2012 WL 33894 [holding the plaintiffs' claim was implausible because the plaintiff failed to allege that "any third party has ever come forward attempting to enforce the debt"].)

During oral argument on this matter, appellant stated that he was seeking a declaratory relief so he could obtain a determination of whether respondents have the right under state law to the payments on the secured note held in the bankruptcy trust account. However, appellant also conceded that his obligation to pay remains. Furthermore, appellant did not claim in his brief that he would be entitled to the proceeds in the bankruptcy trust account, nor in our view, would such a claim be plausible given

8

the status of the obligation on the note, even if respondents' claims were to be found invalid.

If there are any adverse legal interests, it would be between the respondents, not between appellant and respondents. Even if the securitization of the Note is defective, appellant is not a victim of such invalid transfers because his obligations under the Note remain unchanged. (*Jenkins v. JP Morgan Chase Bank, N.A*. (2013) 216 Cal.App.4th 497, 515.) The relevant parties to the alleged improper securitization would be the "holders (transferors) of the promissory note and the third party acquirers (transferees) of the note." (*Ibid*.) In *Jenkins*, the plaintiff, like appellant, argued that the defendants' alleged violations of the PSA resulted in an improper securitization of the promissory note. (*Id*. at p. 510.) The California Court of Appeal for the Fourth Appellate District held that plaintiff's declaratory relief cause of action lacked merit because she could not establish "the existence of an actual, present controversy between herself and Defendants." (*Id*. at p. 515.) The *Jenkins* court stated that "the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees. [The plaintiff], however, may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a 'controversy of concrete actuality.'" (*Ibid*.) So long as appellant continues to make payments on the debt he owes, he is not at risk of an "unauthorized loss of [his] interest in the [N]ote." (*Ibid*.)

In sum, appellant has not alleged sufficient facts to establish the existence of an actual, present controversy between him and respondents. As a result, he has not established his entitlement to declaratory relief and the trial court properly sustained the demurrer on this cause of action.

### B. Standing

Even if an actual controversy existed between the parties, appellant has not demonstrated that he has standing. By asserting that respondents "do not own the debt for which they are seeking payment[,]" appellant is essentially challenging the lender's chain of title to determine which parties are the true holders of the Note.

However, California's nonjudicial foreclosure scheme does not allow for such preemptive actions. (*Jenkins v. JP Morgan Chase Bank, N.A., supra,* 216 Cal.App.4th at p. 515 ["As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions."].) California's nonjudicial foreclosure scheme "provide[s] a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) Because "'[t]hese provisions cover every aspect of exercise of the power of sale contained in a deed of trust[,]' . . . 'California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.'" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 [citing *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285, *Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098].)

The *Gomes* court stated, "nowhere does [Civil Code section 2924, subdivision (a)] provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." (*Gomes v. Countrywide Home Loans, Inc., supra,* 192 Cal.App.4th at p. 1155.) As the *Gomes* court reasoned, "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Ibid.*)

10

Here, appellant's suit is essentially a preemptive action. As appellant acknowledges, this is not a wrongful foreclosure action. There is no indication within the SAC that foreclosure proceedings have been initiated. Much of the discussion in the parties' briefs concerns the applicability and merits of *Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079. Appellant relies on *Glaski* to argue that (1) he has standing to challenge the property's chain of title and (2) the tender requirement should not apply.

In *Glaski*, the California Court of Appeal for the Fifth Appellate District found that borrowers may challenge a securitized trust's chain of title by arguing the attempts to transfer the deed of trust caused the chain of title to become defective. (*Glaski v. Bank of America, National Association, supra*, 218 Cal.App.4th at pp. 1094-1095, 1100.) Under *Glaski*, "[t]ransfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans . . . ." (*Id*. at p. 1083.)

We are not persuaded by *Glaski*. In holding that a borrower does indeed have standing to attack a void assignment to which it is not a party, *Glaski* attempts to distinguish itself from *Gomes*. (*Glaski v. Bank of America, National Association, supra*, 218 Cal.App.4th at p. 1095.) In *Gomes*, the plaintiff sought a determination of a nominee's right to initiate foreclosure. (*Id.* at pp. 1098-1099.) In *Glaski*, the plaintiff sought a determination that an attempted transfer to the party seeking foreclosure is void. (*Id.* at p. 1095.) However, we find that *Glaski* reads *Gomes* too narrowly. *Gomes* holds that there is no judicial action to challenge the authority of the person initiating the foreclosure process. As *Jenkins* shows, that applies whether the challenge is to the lender's nominee, or as here, a transferee. This standing rule applies to appellant because he is still a third party to the PSA.

Moreover, *Glaski* acknowledges that under California law, "a third party's ability to challenge an assignment has been stated . . . as follows: [¶] 'Where an assignment is merely voidable at the election of the assignor, third parties, and particularly the obligor,

11

cannot . . . successfully challenge the validity or effectiveness of the transfer." (*Glaski v. Bank of America, National Association, supra*, 218 Cal.App.4th at pp. 1094-1095 [citing 7 Cal.Jur.3d (2012) Assignments, § 43, p. 70].) *Glaski* premises its distinction on the difference between void and voidable assignments. (*Glaski v. Bank of America, National Association, supra*, 218 Cal.App.4th at p. 1100.)

*Glaski's* reasoning relies on two federal Court of Appeals cases interpreting the law of other jurisdictions and an unpublished federal district court case. (See *Conlin v. Mortgage Electronic Registration Systems, Inc.* (6th Cir. 2013) 714 F.3d 355, 361; *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282, 291; *Gilbert v. Chase Home Finance, LLC* (E.D.Cal. May 28, 2013, 2013 WL 2318890)].) Specifically, *Glaski* relies on New York state law for the proposition that "an assignment violating the trust agreement or pooling service agreement is void under New York state law and thus subject to challenge by non-parties." (*In re Sandri* (Bkrtcy. N.D. Cal. 2013) 501 B.R. 369, 375.)

However, even if this court accepted *Glaski*'s assertion that New York state law is controlling and assumed that respondents violated the PSA, *Glaski*'s interpretation of New York state law is still incorrect, and appellant still lacks standing. "New York intermediate appellate courts have repeatedly and consistently found that an act in violation of a trust agreement is voidable, not void." (*In re Sandri, supra,* 501 B.R.. at pp. 375-376.) Appellant questions whether the Note was actually delivered to Citibank on or about the closing date. An "after-the-deadline transaction would merely be *voidable* at the election of one or more of the parties—not void. Accordingly, [p]laintiffs, who [a]re not parties to the PSA, do not have standing to challenge it. . . . [E]ven if it is true that the Note was transferred to the Trust in violation of the PSA, that transaction could be ratified by the beneficiaries of the Trust and is merely voidable. (*Calderon v. Bank of Am. N.A.* (W.D. Tex. 2013) 941 F.Supp.2d 753, 766, 767.)

This court also declines to follow *Glaski* because it remains to be the minority view for California courts. (See e.g., *Mendoza v. JP Morgan Chase Bank N.A.* (2014)

12

228 Cal.App.4th 1020, 1033.) "'District courts in the Ninth Circuit have [also] generally rejected *Glaski,* and sided with *Jenkins,* noting *Glaski* is a minority view.'" (*Lanini v. JPMorgan Chase Bank* (E.D. Cal. 2014) 2014 WL 1347365; see also, *Sanders v. Sutton Funding, LLC* (S.D. Cal. 2014) 2014 WL 2918590 [citing several federal cases to show that "every other federal district court in California has also disavowed *Glaski.*"].)[5] Until the California Supreme Court adopts *Glaski*, this court will continue to follow the majority rule.

Finally, appellant also relies on the Homeowner Bill of Rights (HBR) to argue he has standing despite the *Gomes* and *Jenkins* decisions. However, the HBR went into effect on January 1, 2013. (See Civ. Code, § 2923.4.) According to appellant, Wells Fargo recorded a notice of default on April 30, 2009. "California courts comply with the legal principle that unless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application' [citation]." (*Myers v. Philip Morris Companies, Inc*. (2002) 28 Cal.4th 828, 841; italics in original.) Though appellant points to sections in the HBR to argue that he has a right to identify the true holder of the Note, he does not point to any provision of the HBR that suggests that the California Legislature intended for the HBR to apply retroactively. Nor is there a section within the HBR that states it applies retroactively. Thus, the HBR does not grant appellant new rights upon appeal.

### III. *Appellant Failed to Plead Sufficient Facts to Support His Quiet Title Cause of Action Against Respondents*

Appellant also seeks to quiet title to his property against parties who are not true holders of the Note. To state a quiet title claim, a plaintiff must plead: (1) a description

---

[5] The Ninth Circuit has only addressed *Glaski* in one case: *In re Davies* (9th Cir. Mar. 24, 2014) 565 Fed.Appx. 630. The Ninth Circuit stated "the weight of authority holds that debtors in [plaintiff's] shoes—who are not parties to the pooling and servicing agreements—cannot challenge them." (*Ibid.*)

13

of the property that is the subject of the action; (2) the title of the plaintiff as to which a determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.  (Code Civ. Proc., § 761.020.)

In addition to these statutory requirements, "[u]nder California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt."  (*Montoya v. Countrywide Bank, F.S.B.* (N.D. Cal. 2009) 2009 WL 1813973, *11-12 [citing *Karlsen v. American Savings and Loan Assn.* (1971) 15 Cal.App.3d 112, 117; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578.)  "A quiet title action requires that a plaintiff allege tender or offer of tender of the amounts admittedly borrowed."  (*Montoya v. Countrywide Bank, F.S.B., supra,* 2009 WL 1813973 at p. 11.; see also *Shimpones v. Stickney* (1934) 219 Cal. 637, 649 ["a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."].)  This tender requirement is "based upon the equitable principle that he who seeks equity must do equity. . . .  [A] court of equity will not aid a person in avoiding the payment of his or her debts."  (*Mix v. Sodd* (1981) 126 Cal.App.3d 386, 390.)

Appellant asserts he satisfies the tender requirement because he has "paid all amounts currently owed with respect to the Note under his confirmed bankruptcy plan."  We disagree.  Appellant relies on *Winnett v. Roberts* for this proposition.  (*Winnett v. Roberts* (1986) 179 Cal.App.3d 909.)  However, in *Winnett*, the plaintiffs tendered the *full* principal amount of debt plus interest.  (*Id*. at p. 921.)  The *Winnett* court held that this *full* payment of the underlying debt "discharged both the obligation and the security." (*Id*. at p. 922.)  Appellant's circumstances are different.  He has not met the tender requirement because he has not tendered full payment of his admitted debt.  Under Civil Code section 1486, a "tender must be one of full performance"; a tender of partial performance is of no effect.  (*Arnolds Management Corp. v. Eischen, supra*, 158

14

Cal.App.3d at p. 580; Civ. Code, § 1486; see also *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1053 ["A valid tender of performance must be of the full debt, in good faith, unconditional, and with the ability to perform."].)

We also recognize that this tender rule is not absolute and courts have discretion to excuse the tender requirement when its application would be inequitable. (*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424.) For example, "'if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt.'" (*Ibid*.)[6] Here, appellant is not attacking the validity of his underlying debt. Rather, appellant argues that tender is not required because (1) he "does not seek to set aside a completed foreclosure sale;" and (2) he does not seek to quiet title against a mortgagee but against "entities who are falsely claiming to be the mortgagee."

Appellant relies on *Glaski* to argue the tender requirement does not apply. We find, however, that *Glaski* is not directly applicable to appellant's circumstances. The *Glaski* court held that "[t]ender is not required where the foreclosure sale is void, rather than voidable, such as when a plaintiff proves the entity lacked the authority to foreclose on the property." (*Glaski v. Bank of America, National Association, supra*, 218 Cal.App.4th at p. 1100.) The court specifically stated it would not address other exceptions to the tender requirement such as whether requiring tender would have been inequitable. (*Ibid*.) As appellant repeatedly admits, his action does not involve a

---

[6] Courts have also excused the tender requirement (1) "when the person seeking to set aside the sale has a counterclaim or set-off against the beneficiary; ([2]) where it would be inequitable to impose the condition on the party challenging the sale; and ([3]) when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. . . . *Chavez v. Indymac Mortg. Services* (2013) 219 [Cal.App.4th] 1052, 1063, 162 C.R.3d 382 [exception to tender requirement applied where plaintiff sufficiently alleged that foreclosure sale was void because defendant lacked contractual basis to exercise power of sale; original loan allegedly had been modified, and plaintiff had fully performed under modification agreement until defendant breached agreement by refusing to accept payment].)" (4 Witkin, Summary of Cal. Law (10th ed. 2014 supp.) Security Transactions in Real Property, § 166, p. 199.)

foreclosure sale—much less a sale that is void. (See e.g., *Fathi v. J.P. Morgan Chase Bank, N.A.* (S.D. Cal. 2014) 2014 WL 3015040 [holding that the plaintiff was still "bound by the tender rule" because his case did not involve a void underlying foreclosure].)

Finally, appellant asserts that it would be inequitable for him to pay his debt without knowing to whom he owes his debt. We find this argument unpersuasive. As observed elsewhere here, appellant has been making his payments into an account in the bankruptcy proceeding. As a result any right he has in the secured asset at issue is protected by his compliance with Bankruptcy Court's orders and his timely payment on the Note. As respondent points out, appellant can pay Wells Fargo, the loan servicer [or into the bankruptcy account] and insist on receiving his canceled promissory note and reconveyance of his deed of trust in return. (See *Greer v. O'Dell* (11th Cir. 2002) 305 F.3d 1297, 1302 [A loan servicer is a "real party in interest with the standing to conduct . . . the legal affairs of the investor related to the debt it services."].) It is Wells Fargo's responsibility or that of the bankruptcy court to ensure that appellant's payments are allocated to the true holder of the Note. Appellant's only interest is in receiving full credit for the payments he makes – an interest that is in no way jeopardized here. Thus, appellant has not demonstrated that it is unfair or that he will be prejudiced because he does not know to whom he owes his debt.

### IV. Trial Court Did Not Abuse Its Discretion in Sustaining the Demurrer Without Leave to Amend

Finally, we review whether the trial court abused its discretion by sustaining the demurrer without leave to amend. (*Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at p. 966.) To show abuse of discretion, the plaintiff must demonstrate how the complaint could be amended and how the amendment would change the legal effect of the complaint. (*Roman v. City of Los Angeles, supra*, 85 Cal.App.4th at p. 322.) In his briefs and his memorandum of points and authorities in opposition to the SAC's demurrers, appellant does not explain how the complaint could be amended. Additionally, we also

16

consider that a "demurrer may also be sustained without leave to amend where the nature of the defects and previous unsuccessful attempts to plead render it probable plaintiff cannot state a cause of action." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958-959.) Appellant was already granted an opportunity to amend his complaint. Given the defects discussed above for appellant's declaratory relief and quiet title causes of action, we find that it is not reasonably possible for these defects to be cured by amendment. The trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

### *DISPOSITION*

The judgment is affirmed. Respondents are entitled to costs on appeal.


**WOODS, J.**

**We concur:**



**PERLUSS, P. J.**



**SEGAL, J.** [*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.